UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTOINETTE AGEE O/B/O M.P.W.,

        Petitioner,

        v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

**Hon. Hugh B. Scott**

12-CV-0657

**Report
&
Recommendation**

## INTRODUCTION

Claimant, Antoinette Agee, on behalf of MPW,[1] brought this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Supplemental Security Income benefits ("SSI") to MPW. On March 12 and 14, 2013, the parties filed cross-motions for judgments on the pleadings. Claimant argues that the Administrative Law Judge ("ALJ") assigned to her case committed a legal error by failing to give her testimony greater weight. In addition, Claimant argues that the ALJ's decision to deny SSI benefits was not supported by substantial evidence, and that substantial evidence supports marked limitations in several functional domains. The Commissioner opposes Claimant's motion, arguing that the ALJ's decision is supported by substantial evidence and should be upheld.

---

[1] Fed. R. Civ. P. 5.2(a)(3) states that unless otherwise ordered by the court, a minor's name should be replaced with his initials.

1

The Court has deemed the pending motions submitted under Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons below, the Court respectfully recommends granting Claimant's motion in part and remanding the case to the Commissioner for further proceedings. (Docket No. 13). The Court also recommends denying the Commissioner's motion. (Docket No. 11).

## FACTUAL & PROCEDURAL BACKGROUND

I. **Initial Claim and Hearing**

Claimant filed for SSI on April 14, 2009 on behalf of her minor son MPW. (Administrative Record, [hereinafter "R."] at 13). The claim was initially denied and a timely request for a hearing was filed. (R. at 13.) Claimant appeared in front of ALJ William R. Pietz on January 26, 2011. (R. at 13). The ALJ received medical records from Dr. Reginald J. Roberts, a school psychologist who evaluated MPW in relation to his Attention Deficit Hyperactivity Disorder ("ADHD") and Oppositional Defiant Disorder ("ODD"); Dr. Jennifer Haak, a physician at Millard Fillmore Hospital who performed an Initial Psychiatric Evaluation of MPW in 2009; Janine Duvernay, a Social Worker, who at Claimant's request, treated MPW for psychiatric problems at Millard Fillmore; Dr. Michael Cummings, a physician who treated MPW along with Janine Duvernay; and Dr. Jane Meyer, a non-examining state-appointed physician who reviewed MPW's medical records for the purposes of the SSI claim. (R. at 166, 231, 238, 284, 305). The claimant also provided information on MPW's prescriptions for Concerta and Risperidone, which he had received from Dr. Lynn Lynch and Dr. Hoffman. (R. at 179-80). In addition to the medical evidence, three of MPW's teachers filled out four "Teacher Questionnaires" under which they analyzed the six domains for disability set forth in 20 C.F.R.

§ 416.926 (a)(d). Finally, the ALJ received school records from MPW's school district. These records outlined all disciplinary action taken against MPW, reviewed MPW's Individual Education Plan, and provided a current academic performance evaluation. (R. at 171-78, 184-197, 259-66).

At the hearing, on January 26, 2011, the ALJ heard testimony from MPW and Antoinette Agee. (R at 34-50). Given the 20 pages of transcript, the hearing appears to have been brief. (R. at 34-50). The most notable developments from the hearing were MPW's discussion of his friends, and the ALJ's observation that MPW was attentive during the hearing. (R. at 27).

## II. The Administrative Law Judge's Decision

On February 10, 2011, ALJ Pietz issued a decision denying MPW any SSI benefits. (R. at 10). The ALJ determined that MPW was a minor and was not engaged in substantial gainful activity. (R. at 13). The ALJ also found that MPW's ADHD and ODD together constituted a severe impairment. R. at 10. Even though MPW's impairments were severe, the ALJ determined that they were not medically equivalent to an impairment listed in the regulations. (R. at 10). The ALJ came to this conclusion by reviewing the six "domains" that guide whether a severe impairment is medically equivalent to a "listed impairment." 20 C.F.R. § 416.926 (a)(d).

### 1. Acquiring and Using Information

First, the ALJ analyzed MPW's ability to "acquire and use information." (R. at 18). The ALJ concluded that MPW had less than marked limitation in this domain. (R. at 19). In his analysis the ALJ cited the opinion of Dr. Jennifer Haak, a treating physician. Dr. Haak's examination revealed that MPW was not overly defiant and easy to engage. (R. at 19). Dr. Haak did, however, note that MPW was easily distracted and diagnosed him with ADHD, combined

3

with ODD. (R. at 19). The ALJ also looked to teacher questionnaires in his analysis. (R. at 19-20). The teacher questionnaires consistently stated that MPW's reading, writing, and math levels were either at or one grade level below those of his classmates. The ALJ also reviewed MPW's school records. (R. at 19).

The ALJ reviewed MPW's reading, writing, and math levels. (R. at 20). In the third-grade, teacher Kim Kujawa stated that MPW was reading and writing at a second-grade level, while doing math on a third-grade level. In the fourth-grade, Kim Kujawa re-evaluated MPW and stated that he was reading at a third-grade level, writing at a late second-or early third-grade level, and doing math at a fourth-grade level. (R. at 20). In the fifth-grade, teacher Cynthia Yarborough stated that MPW was reading, writing, and doing math at a 3.9 grade level. (R. at 20).

In addition, the ALJ reviewed MPW's treatment records for his ADHD and ODD. These records stated that MPW had significantly improved in controlling his symptoms since beginning therapy. (R. at 20). Finally, the ALJ also reviewed the testimony of Dr. Meyer. Dr. Meyer opined that MPW was less than marked under this domain and that he had an IQ of approximately 94. (R. at 20). Using all of this information, the ALJ determined that MPW was less than marked in this domain.

    2. <u>Attending and Completing Tasks</u>

The ALJ also reviewed MPW's symptoms in relation to the "attending and completing tasks" domain. (R. at 21). This domain focuses on the child's ability to concentrate and follow directions when completing work. When analyzing this domain the ALJ relied primarily on the teacher questionnaires. (R. at 21). One teacher stated that MPW had serious problems paying attention when spoken to, focusing long enough to finish activities, and working without

distracting self or others. (R. at 21). A second teacher stated that he had "obvious problems" in this domain. (R. at 21). A third teacher noted that he was easily distracted and often impulsive. Finally, a teacher noted that MPW was easily distracted and has a difficult time refocusing once distracted. (R. at 21).

Dr. Meyer, also opined on MPW's condition under this domain. (R. at 21). Dr. Meyer's analysis noted that MPW's condition had improved while taking Concerta. (R. at 21). Dr. Meyer also noted that the teacher questionnaires all seem to say that MPW was easily distracted and having problems in this domain. Despite this, Dr. Meyer concluded that MPW was less than marked in this domain. (R. at 21). The ALJ, relying on Dr. Meyer's opinion, held that MPW was less than marked in this domain. (R. at 21). The ALJ did not provide any reasoning as to why he relied on a non-treating physician's opinion as opposed to the teacher questionnaires.

### 3. Interacting with Others

When analyzing this domain the ALJ looked to school discipline records, teacher questionnaires, Dr. Meyer's records, and the testimony of MPW at the hearing. In his analysis, the ALJ notes that the majority of MPW's teachers found that he had only slight problems under this domain. (R. at 23-24). In addition, Dr. Meyer reported that while MPW can be overly aggressive, his condition had improved while on Concerta. The ALJ also considered MPW's behavior in the hearing. (R. at 17). The ALJ stated that the boy seemed well-behaved. At the hearing MPW stated that he had approximately eight friends and he would play street hockey and Xbox with them. (R. at 17).

Finally, the ALJ noted that MPW has a history of being disciplined for his classroom behavior. (R. at 17). He had been suspended twice: once for pulling a prank on another student,

5

and once for destroying classroom décor. Ultimately, the ALJ found that MPW was less than marked in this domain. (R at 23).

    4.  <u>Moving About and Manipulating Objects</u>

Under the "Moving About and Manipulating Objects" domain, the ALJ reviewed two different teacher questionnaires, and the testimony of Dr. Meyer. (R. at 25). Both the teacher questionnaires and Dr. Meyer's decision stated that MPW had no problems in this domain. (R. at 25). Relying on these statements, the ALJ decided that MPW had no limitation in this domain. (R. at 25).

    5.  <u>Caring for Yourself</u>

It is unclear how much information the ALJ considered under the "Caring for Yourself" domain. <u>Id.</u> at 25-26. Ultimately, the ALJ decided that MPW was less than marked under this domain. <u>Id.</u> at 26. The ALJ cited to two teacher questionnaires, and Dr. Meyer's testimony. <u>Id.</u> at 25-26. It is unclear, however, whether the ALJ considered some of the self-injurious behavior that MPW has exhibited or the teachers who stated that MPW had serious problems controlling his emotional state. <u>Id.</u> at 167, 177, 247, 305.

    6.  <u>Health and Physical Well-Being</u>

The ALJ looked at two teacher questionnaires and the opinion of Dr. Meyer, a non-treating physician when analyzing this domain. (R. at 27). The teacher questionnaires noted that MPW took medication and did not miss school frequently. (R. at 27). Dr. Meyer stated that MPW as less than marked in this domain. (R. at 27). The ALJ ultimately held that MPW had no limitation in this domain. (R. at 27).

6

III. **Subsequent Appeal**

On April 13, 2011, following the ALJ's unfavorable decision, Claimant filed an appeal with the Appeals Council. (R. at 7). On May 14, 2012, the Appeals Council denied Claimant's appeal and upheld the ALJ's decision. (R. at 1).

On July 9, 2012, Claimant commenced this action to challenge the ALJ's decision. (Docket No. 13 at 2). On March 14, 2013, Claimant moved for judgment on the pleadings. (Docket No. 13). In her motion, Claimant argues that the ALJ erred in holding that MPW was less than marked in: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; and (4) caring for self. In addition, Claimant argues that the ALJ failed to properly analyze subjective non-medical evidence, such as Agee's testimony in its analysis.

On March 12, the Commissioner moved for judgment on the pleadings. (Docket No. 11). The Commissioner refutes Claimant's arguments, and asserts that substantial evidence supports the ALJ's decision.

## DISCUSSION

I. **Scope of Review**

When a district court reviews a denial of SSI benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); see also Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. Stupakevich v. Chater, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); Smith v. Shalala, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a

7

Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. Winkelsas v. Apfel, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000) (Heckman, Mag. J.). The district court may not uphold the Commissioner's decision when it is based on an "erroneous view of the law that improperly disregards highly probative evidence." Diaz ex rel. E.G. v. Comm'r of Soc. Sec., No. 06-CV-530-JTC, 2008 WL 821978, at *2 (W.D.N.Y. Mar. 26, 2008) (citing Grey v. Heckler, 721 F.2d 41, 44 (2d Cir.1983)) (Curtin, J.). In assessing the substantiality of evidence, the court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. Briggs v. Callahan, 139 F.3d 606, 608 (8th Cir. 1998). The court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. Id. The opinions of state agency physicians may constitute substantial evidence if they are consistent with the record as a whole. Hickman ex rel. M.A.H. v. Astrue, 728 F. Supp. 2d 168, 178 (N.D.N.Y. 2010).

## II. Legal Standard

A child under the age of 18 is eligible for Social Security disability benefits if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382 (c)(3)(C)(i).

In analyzing whether a child is disabled, the Commissioner must follow a three-step process. First, the Commissioner determines whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the Commissioner finds that the child is engaged in substantial gainful activity, the child will not be awarded benefits. Id.; Torres v. Comm'r, No. 09CV0059, 2010 WL 2674543, at *5 (E.D.N.Y. June 30, 2010).

8

Second, the Commissioner determines whether the child has a "severe impairment." 20 C.F.R. § 416.924 (b)-(c). A "severe impairment" is defined as an impairment that is more than a "slight abnormality or a combination of slight abnormalities that cause no more than minimal functional limitations." 20 C .F.R. § 416.924 (c). If the child's impairment or combination of impairments is determined to be "severe," then the Commissioner must move to the third step. Id.

The third step determines whether the impairment meets or is medically equivalent to an impairment listed in the "Listed Impairments" section of the code. 20 C.F.R. § 416.924 (d); Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004). In determining whether a child's impairments are medically equivalent to a listed impairment the ALJ must examine the record and consider the child's level of functioning in the following six "domains:" (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; (6) health and physical well-being. 20 C.F.R. § 416.926 (a)(b)(1).

If the child has "marked" limitations in two of the domains or an "extreme" limitation in one domain, then his impairments will be "functionally equal" to the listed impairments, and he will be found disabled. 20 C.F.R. § 416.926 (a)(d); White ex rel. Johnson v. Barnhart, 409 F. Supp. 2d 205, 207 (W.D.N.Y. 2006). A child has a "marked limitation" when the impairment interferes "seriously" with its ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926 (a)(e)(2). A child has an "extreme" limitation when the impairment interferes "very seriously" with its ability to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926 (a)(e)(3). When analyzing whether a domain is "marked" or "extreme," courts consider test scores, physical health, and a child's day to day functioning. No single piece of

information, however, can establish whether a child has a "marked" or an "extreme" limitation in a domain. 20 C.F.R. § 416.926 (a)(e)(4). Instead, the court must view the child as a "whole." Id.

In the current case, the ALJ found that the MPW was not employed, and that his ADHD and ODD were severe. (R. at 17.) The ALJ, however, did not find that MPW had a marked impairment in two of the six domains, or an extreme impairment in one of the domains. (R. at 17.) Claimant argues here that the ALJ erred in analyzing four of the six domains. (Docket 13 at 1-2). The Court will review the four disputed domains below.

    1. Acquiring and Using Information

Under the "acquiring and using information" domain, the ALJ must consider the child's ability to learn information and to think about and use the information. 20 C.F.R. § 416.926 (a)(g). In assessing this domain, the ALJ must consider how well a child acquires or learns information, and how well he can use the information learned. Edmond v. Barnhart, No. 04-CV-6515, 2006 WL 2769922, at *9 (W.D.N.Y. Aug. 9, 2006) (Siragusa, J). A child must be able to use language to think about the world, to understand others, and to express himself. Id. For example, a school-age child should be able "to follow directions, ask for information, or explain something." 20 C.F.R. § 416.926 (a)(g)(1)(ii).

School records provide important information in assessing limitations in this domain. Hickman, 728 F. Supp. 2d at 176-79. Poor grades or inconsistent academic performance can indicate a limitation if they are a result of a medical or psychological defect. Fagin ex rel. B.P. v. Comm'r, No. 1:10-CV-813, 2012 WL 213801, at *5-6 (S.D. Ohio Jan. 24, 2012) report and recommendation adopted sub nom. Fagin v. Comm'r, No.1:10CV813, 2012 WL 481787 (S.D. Ohio Feb. 14, 2012). Special educational services, such as the use of a personal aide in regular

classroom settings, or placement of the child in remedial classes, may be an indication that the child is marked in this domain. SSR 09–3p, 2009 WL 396025 (Feb. 17, 2009). In addition, continuous speech, physical, or psychological therapy may be evidence that the child has problems acquiring and using information. Id. The ALJ, must however, consider the kind, level, and frequency of special education services, or therapy when deciding if a child is marked in this domain. Id. The ALJ must also "consider evidence about the child's ability to learn and think from medical and other non-medical sources (including the child, if the child is old enough to provide such information)" and limitations are assessed in all settings, not just in school. Id.

A marked limitation in this domain involves an impairment that "interferes seriously with [the] ability to independently initiate, sustain or complete activities" or when the claimant's standardized test scores fall between two and three standard deviations below the mean. See 20 C.F.R. § 416.926 (a)(e)(2)(i),(iii); J.B. ex rel. Barboza v. Astrue, 738 F. Supp. 2d 260, 265-66 (D. Mass. 2010).

In Brewer ex rel. S.B. v. Astrue, the ALJ found that the minor claimant, S.B., did not have marked or extreme limitation in the domain of acquiring and using information, despite having a borderline IQ, being learning disabled, performing below grade level, and being placed special education. Brewer ex rel. S.B. v. Astrue, No. 08-CV-0518MAT, 2010 WL 2287480, at *5-6 (W.D.N.Y. June 2, 2010) (Telesca, J.). S.B.'s special education teacher stated that S.B. was in the third grade, but had the reading writing, and math skills of a first or second-grader. Id. at *2-3. S.B.'s teacher noted that S.B. needed a "great deal of support to complete tasks." Id. Other evidence showed that S.B. understood all instructions, and was making progress in school. Ultimately, after weighing all of the evidence, the ALJ found that S.B. was not marked in this domain. Id. at *5-6. The district court upheld the ALJ's findings. Id.

The current case is similar to Brewer ex rel. S.B. v. Astrue. MPW's teachers have all reported that he performs below grade level in many of his classes. (R. at 138, 296, 407). In addition, MPW has been placed in a special education classroom, and had previously had speech and language therapy. (R. at 422). MPW, however, has improved in the classroom over time, and no longer needs language therapy. (R. at 20, 285-89). Cf. Brewer, 2010 WL 2287480, at *5-6 (using the fact the claimant had improved overtime as evidence of a less than marked limitation). In addition, the Mid-Erie Counseling program reported that MPW's symptoms in this domain improved through counseling. (R. at 391). Furthermore, Dr. Reginald Roberts, a school psychologist, noted that MPW had improving test scores over time. (R. at 422).

This information, at most, shows that MPW is somewhat behind his classmates with respect to language skills and grades. He is, however, passing, and his speech has improved to the point where he no longer needs therapy. This level of performance simply does not justify disturbing the ALJ's findings. Thus, this Court finds that the ALJ's decision that MPW was less than marked in this domain is supported by substantial evidence. Furthermore, the ALJ's failure to provide a specific rationale for finding that the Claimant was not marked in this area does not prevent this Court from upholding his determination because substantial evidence, as outlined above, supports the ALJ's determination. Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982). Cf. Miller v. Comm'r, 409 F. App'x 384, 388 (2d Cir. 2010) (unpublished decision) (citing Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.")).

2. <u>Attending and Completing Tasks</u>

The domain of "attending and completing tasks" focuses primarily on a child's ability to focus and maintain attention, and beginning and finishing activities. 20 C.F.R. § 416.926 (a)(h). A school-age child should be able to focus his attention on a variety of situations, remember and organize his school materials, and complete classroom and homework assignments. 20 C.F.R. § 416.926 (a)(h)(v). A school-age child should be able to concentrate on details and not make careless mistakes in his work. 20 C.F.R. § 416.926 (a)(h)(2)(iv). A school-age child should also be able to change activities or routines without distracting himself or others, and stay on task and in place when appropriate. <u>Id.</u> In addition, the child should be able to sustain his attention long enough to participate in group sports, read by himself, and complete chores. <u>Id.</u> Finally, a child should be able to transition between tasks without extra reminders. <u>Id.</u>

When analyzing this domain courts consider all relevant information. 20 C.F.R. § 416.926 (a)(h)(3). The federal regulations, however, provide specific examples of what types of behaviors courts should look for when deciding if a child has a marked or extreme limitation in this domain. The court should look at whether the child is easily startled, distracted, or over-reactive to sounds, sights, movements, or touch. <u>Id.</u> In addition, a child who is slow to focus, or fails to complete activities of interest may be marked in this domain. <u>Id.</u> If a child is repeatedly sidetracked from activities or frequently interrupts others, he may also be marked in this domain. <u>Id.</u> Children who are easily frustrated and give up on tasks they are capable of completing may also be marked in this domain. <u>Id.</u> Finally, if a child requires extra supervision to stay engaged in an activity then they may be marked in this domain.

In <u>Hickman ex rel. v. Astrue</u>, the ALJ found that the plaintiff was less than marked in this domain. <u>Hickman ex rel. v. Astrue</u>, 728 F. Supp. 2d 168, 173-75 (N.D.N.Y. 2010). The ALJ relied heavily on the non-treating physician's remarks. <u>Id.</u> The non-treating physician's remarks

13

provided no rationale and were contrary to all of the other evidence on the record. Id. The record indicated that the plaintiff needed extra time to complete tasks, could not take tests without being distracted, and needed simplified instructions. Id. The district court concluded that the ALJ erred by relying too heavily on the non-treating physician's opinion evidence. The district court stated that the weight given to non-examining sources will depend on the degree to which the record supports their explanations. Id. at 179-80 (quoting 20 C.F.R. § 404.1527). As a result, the district court could not determine whether the ALJ's decision was supported by substantial evidence, and remanded the case for further proceedings.

Here, similar to Hickman, the Court does not know why the ALJ weighed the evidence as he did. The available evidence consisted of an opinion from Dr. Meyer, and four teacher evaluations. All four teachers provided information that would appear to support a finding of a marked limitation. (R. at 140, 148, 298, 409). Dr. Meyer, on the other hand, opined that MPW was less than marked after reviewing MPW's records. (R. at 286). The ALJ acknowledged the opinions from the four teachers, but nonetheless sided with Dr. Meyer without explanation. (R. at 22). The ALJ may well have had reason to discount the opinions of the four teachers and to favor Dr. Meyer's opinion. The Court, however, cannot tell those reasons from the decision. Remand is necessary for a further elaboration of the ALJ's analysis. In recommending remand for this domain, the Court expresses no opinion as to how the ALJ's analysis should look, or whether an explanation of the analysis should lead to a change in the ALJ's decision.

3. Interacting with Others

The domain of interacting and relating with others considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of

the possessions of others. 20 C.F.R. § 416.926 (a)(i). For school-age children, the regulations state the child should be able to develop lasting friendships with other children. 20 C.F.R. § 416.926 (a)(i)(2)(iv). In addition, a child should be able to work in groups and solve problems. Id. The regulations also state that a school-age child should understand other viewpoints, and tolerate different opinions. Id. Finally, the regulations state that a school-age child should be able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. Id.

Some examples of limited functioning in this domain include: (1) reaching out to be held by a caregiver; (2) lacking age-appropriate friends; (3) avoiding or withdrawing from social interactions and new experiences; (4) having difficulty playing games or sports with rules; (5) having difficulty communicating; and (6) having difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926 (a)(i)(3).

The ALJ's decision that MPW was less than marked in this domain is supported by substantial evidence. The child stated in the hearing that he had eight friends and that he played Xbox and street hockey with them. (R. at 46-47). At the hearing, the ALJ noted that MPW sat attentively, and seemed well-adjusted. (R. at 27). In addition, one of MPW's teachers noted that MPW is "very sociable." (R. at 140). A second noted that almost all of MPW's speech can be understood, and that MPW had no problems in this area. (R. at 299, 301). MPW no longer needs speech therapy. (R. at 285-89). Dr. Meyer also opined that MPW was less than marked in this domain. (R. at 286). Given the amount of evidence suggesting that MPW is a sociable child, it is obvious that a reasonable mind could conclude that MPW was less than marked in this domain. See Tejada, 167 F.3d at 773-74. Thus, this Court upholds the ALJ's decision in this domain.

4. <u>Caring for Self</u>

In this domain, the court considers how well a child maintains a healthy emotional and physical state, including how well he gets his physical and emotional wants and needs met in appropriate ways. 20 C.F.R. § 416.926 (a)(k). In addition, the court should consider how the child copes with stress and changes in his environment, and whether the child takes care of his own health, possessions, and living area. Id. The "caring for self" domain also considered how effectively a child can regulate himself, respond to changes in emotions, and cooperate with others in taking care of personal needs, health and safety. Id. This domain is characterized by a sense of independence and competence. Id.

The "Caring for Self" domain includes a child's ability to meet his physical needs, such as feeding, dressing, toileting, and bathing. Id. In addition the domain requires children to effectively understand his emotional needs. To effectively meet his emotional needs, a child must employ effective age-appropriate coping strategies, and identify and regulate feelings, thoughts, urges, and intentions. Id. A child should also be able to respond to circumstances in safe and appropriate ways by making decisions that do not endanger himself.

The regulations surrounding this domain list several examples of symptoms that may indicate that a school-age child (ages 6-12) is marked in this domain. 20 C.F.R. § 416.926 (a)(k)(3). These examples include children who: (1) place non-nutritive or inedible objects in their mouth; (2) engage in self-soothing, or stereotyped activities that show developmental regression (e.g., thumb sucking, re-chewing food, body rocking, head banging); (3) cannot dress or bathe themselves appropriately; (4) engage in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take medication); (5) do not spontaneously pursue enjoyable activities or interests; (6) have disturbance in eating or sleeping patterns. Id.

16

Here, the ALJ's decision has left the Court with no guidance as to how the ALJ decided on a less than marked limitation. The entirety of the analysis of this domain consists of one underlined conclusory sentence, followed by three very short paragraphs. (R. at 26). The first short paragraph cites, without any explanation or analysis, one statement made by one teacher on one particular day. (R. at 26). The next short paragraph is even more confusing, because it contains information that would appear to support the claimant, even if insufficiently. (R. at 26). This paragraph again cites one teacher questionnaire describing a problem with patience. (R. at 26). Again, no explanation or analysis follows the citation to the limits of patience. (R. at 26). Finally, the third short paragraph repeats the conclusory assertion of a less than marked limitation. (R. at 26). The paragraph ends with a generic repetition of difficulty with patience and then adds a conclusory assertion about limited insight and judgment. (R. at 26).

This analysis fails to address any number of points that appear in the record. The ALJ did not address the incident of the claimant striking his head against the radiator, nor did the ALJ address the numerous other instances in which the claimant injured himself, or failed to express his emotions properly. (R. at 177, 238, 268, 286). Cf. Woodall v. Colvin, No. 5:12 CV 1818, 2013 WL 4710516 (N.D. Ohio Aug. 29, 2013) (remanding the ALJ's decision because the ALJ did not delve into the claimant's ability to control himself and cope with the stress and changes in his environment, his engaging in self-soothing activities, and the claimant's ability to meet his physical and emotional needs). There may be an appropriate basis to discount this evidence in favor of other evidence supporting a less than marked limitation. In the complete absence of any explanation leading to that conclusion, however, this Court will provide the ALJ with another opportunity to assess the evidence, or supplement the record. The Court emphasizes that it takes

17

no position on what the final conclusion should be. The Court's concern at this time is a lack of explanation for the conclusion reached.

### III. Credibility

Apart from the review of the four disputed domains set forth above, MPW's mother, Agee, argues that the ALJ erred in finding that her testimony was not credible. The ALJ made no explicit finding that Agee was incredible. Rather, Agee infers a lack of credibility from the ALJ's failure to mention her testimony in his decision. Agee argues that her testimony should carry considerable weight because she would have been in an obvious position to know many of the clinical and social factors affecting the four domains in dispute. The Commissioner argues that a specific assessment of Agee's testimony is irrelevant because the record elsewhere provides substantial evidence.

Under the regulations, parents are allowed to testify about a child's symptoms when the child cannot describe them fully. 20 C.F.R. § 416.928 (a). The parents are not obligated to testify, however, and the ALJ is not obligated to seek such testimony. Id. Additionally, the ALJ did not have to mention every item of testimony presented as long as the record allowed the court to understand the ALJ's rationale. Miller, 409 F. App'x at 388. The regulations also state that a parent's testimony alone is not enough to establish a physical or mental impairment. 20 C.F.R. § 416.928 (a). Here, as noted above, the record has given the court specific reasons to believe that two of the disputed domains do not indicate a marked impairment, while two others may or may not indicate a marked impairment upon further assessment. That information by itself supports the Court's recommendations. Claimant is correct that Agee does not appear in the ALJ's decision and that the absence could have more than one meaning. Given, however, that the child was able to explain himself at the hearing and that the record provided other

18

information, why the ALJ failed to mention Agee's testimony is irrelevant. The Court, however, is remanding two of the four disputed domains for further review. Agee is free to argue at agency level why her testimony should be given more weight.

## **CONCLUSION**

For all of the foregoing reasons, this Court respectfully recommends that the Commissioner's motion for judgment on the pleadings (Docket No. 13) be denied, and that Claimant's motion (Docket No. 11) for similar relief be granted in part. The case should be remanded for further administrative proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this report and Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report and Recommendation to all parties.

Any objections to this Report and Recommendation must be filed with the Clerk of this Court within 14 days after receipt of a copy of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a). Failure to file objections to this Report and Recommendation within the specified time, or to request an extension of such time waives the right to appeal any subsequent District Court's Order adopting the recommendations contained therein. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Assocs., 66 F.3d 566 (2d Cir. 1995).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Paterson-Leitch Co. v. Mass. Mun. Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objection shall specifically identify the portions of the proposed findings and recommendations to which the objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.

SO ORDERED.

                  _/s Hugh B. Scott_____
                  HONORABLE HUGH B. SCOTT
                  UNITED STATES MAGISTRATE JUDGE

DATED: December 6, 2013